IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CATHY WICKERS,
      Plaintiff,

vs.                          Case No.: 3:07cv290/WS/EMT

JERRY DALE UTSEY, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on Plaintiff's third amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 16). Leave to proceed in forma pauperis has been granted (Doc. 11).

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," id., 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed if the facts as plead do not state a claim to relief that is plausible on its

face.  *See* Bell Atl. Corp. v. Twombly, — U.S. —, 127 S. Ct. 1955, 1968–69, 1974, 167 L. Ed. 2d 929 (2007) (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).  Upon review of the third amended complaint, the court concludes that dismissal of several Defendants and several of Plaintiff's claims is warranted.

Plaintiff, a non-prisoner proceeding pro se, names four Defendants in this action:  (1) Jerry Dale Utsey, a "police officer" with the Santa Rosa County Sheriff's Office ("SRCSO"); (2) Wendall Hall, Sheriff of Santa Rosa County; (3) the Santa Rosa County Commission ("Commission"); and (4) the SRCSO (*see* Doc. 16 at 1–2).  Plaintiff alleges that she suffered "physical, emotional, and psychological injuries" as a result of her arrest by Defendant Utsey, and she seeks compensatory and punitive damages (*id.* at 4).

Plaintiff alleges the following facts in support of her claims.[1]  On July 10, 2003, Defendant Utsey arrested Plaintiff while she was at the SRCSO applying for a firearm permit, after advising her that he "had a felony arrest warrant for [her] being a habitual traffic offender"(*id.* at continuation page 1).  She alleges that Defendant Utsey handcuffed her "so tight that her wrists became bruised and the circulation to her hands [was] cut off" (*id*. at 3).  Plaintiff also alleges that during the arrest, "Defendant Utsey walked Plaintiff around the back of the police car [and] pushed Plaintiff into the trunk of the car, slamming Plaintiff's left knee into the rear bumper of the car, injuring Plaintiff's knee" (*id.* at continuation page 2).  Next, Plaintiff alleges Defendant Utsey placed her in the back of the police car and left her sitting "for about two hours in the hot weather" before transporting her to the Santa Rosa County Jail (*id.*).  Plaintiff alleges that the charges filed against her were dropped by the State Attorney's Office for the First Judicial Circuit of Florida because "there was insufficient evidence to prosecute" (*id.* at 3).  Moreover, Plaintiff alleges that an individual had stolen her driver's license and that the individual "had two misdemeanor cases brought against [her]" (*id.* at continuation page 1).  Thus, Plaintiff alleges, the information in the SRCSO's arrest report, as it

---

[1]All facts are derived from the Statement of Facts section of Plaintiff's complaint (Doc. 16 at 3 and continuation pages).

pertains to Plaintiff, "was all erroneous" (*id.*).

On the basis of these facts, Plaintiff makes nine separate claims (*see id.* at 4–continuation page 7). First, Plaintiff claims that she was falsely arrested and illegally imprisoned by Defendant Utsey in violation of the Fourth Amendment (*id.* at 4–continuation page 1). She alleges that Defendant Utsey acted intentionally, maliciously, and with reckless disregard for the natural and probable consequences of his actions (*id.* at continuation page 1). Additionally, Plaintiff alleges that Defendant SRCSO intentionally "passed false information to the Santa Rosa Clerk of the Court [] causing [] arrests [to be shown] that never occurred, which was done intentionally and did cause Plaintiff to lose employment opportunities and suffer mental, emotional, financial and physical duress" (*id.*). Second, Plaintiff claims Defendant Utsey intentionally, maliciously, and with deliberate indifference used excessive force in arresting her in violation of the Fourth Amendment (*id.* at continuation page 2). Third, Plaintiff claims that Defendant Utsey violated the Fourteenth Amendment by assaulting and detaining her (*id.* at continuation page 4). Plaintiff's fourth, fifth and sixth claims raise state law issues regarding the actions of Defendant Utsey. Seventh, Plaintiff alleges that the SRCSO, Wendall Hall, and the Commission had in effect "de facto policies, practices, and customs" in place that were the direct and proximate cause of the conduct of Defendant Utsey (*id.* at continuation page 5–7). Eighth, Plaintiff alleges that Defendants SRCSO, Wendell Hall, and the Commission are liable under the "Respondent Superior" [sic] theory of liability (*id.* at continuation page 7). Ninth, Plaintiff alleges that the SRCSO violated state and federal laws by failing to share fingerprint information between state and federal fingerprint databases (*id.* at continuation page 7–9).

A.    Claim One: Defendant Utsey Falsely Arrested and Illegally Imprisoned Plaintiff in Violation of the Fourth Amendment of the United States Constitution

Initially, as Plaintiff was previously advised in an order to amend (*see* Doc.15), Plaintiff has failed to state a Fourth Amendment claim based upon her allegedly false arrest (and resulting imprisonment) by Defendant Utsey (*id.* at 4, continuation pages 1–2). The elements of a claim for false arrest are a warrantless, malicious arrest or deprivation of liberty without probable cause. Baker v. McCollan, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979); Von Stein v. Brescher, 904 F.2d 572 (11th Cir. 1990). However, a claim of false arrest is barred by the existence of

probable cause or by the subsequent conviction of the accused. *See* Marx v. Gumbinner, 905 F.2d 1503 (11th Cir. 1990); Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986). A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. The existence of probable cause to arrest is based on objective standards. Von Stein, 904 F.2d at 578 (citations omitted). Thus, the level of proof needed to make a probable cause determination is conspicuously less than that which is needed to obtain a conviction, and the fact that a criminal defendant is later acquitted or released does not by itself mean that probable cause was initially lacking. Marx, 905 F.2d at 1507; Von Stein, 904 F.2d at 578 n.9. Further, when qualified immunity is asserted as an affirmative defense to a civil action, the standard becomes even more stringent. To overcome qualified immunity, the plaintiff must additionally show that probable cause could not even have been arguably thought to exist in the eyes of a reasonable officer judging from the facts at hand and the clearly established law at the time. *See* Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999) (citations omitted). "Indeed, 'it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials . . . should not be held personally liable.'" Von Stein, 904 F.2d at 579 (quoting Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040, 97 L. Ed. 2d 523 (1987)).

In the instant case, Plaintiff admits that Defendant Utsey explained to her that he had a felony arrest warrant for her for being a habitual traffic offender (Doc. 16 at continuation page 1). Plaintiff also states that the traffic division of the Santa Rosa Clerk's Office "show[ed] two misdemeanor cases brought against the individual that apparently stole Plaintiff's drivers license []" (*id.*). She further states that charges were actually filed against her, although they were later dismissed (*id.*). Thus, Plaintiff cannot establish that her arrest was unlawful or that probable cause to arrest her was lacking, as an arrest warrant is necessarily based on a finding that probable cause to arrest exists. Moreover, to the extent Plaintiff asserts that a warrant existed, but it was issued on the basis of erroneous information or resulted from someone else's improper use of Plaintiff's identification, Defendant Utsey nevertheless acted lawfully in arresting Plaintiff on the basis of the warrant. *See,*

*e.g.*, Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998) ("a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant"). Plaintiff has not alleged, nor do the facts establish, that Defendant Utsey knew that the arrest warrant was issued in error. Based on the foregoing reasons, Plaintiff's claims against Defendant Utsey for false arrest and illegal imprisonment are not a viable federal claims and should be dismissed.

B.    Third Claim: Defendant Utsey Used Excessive Force in Arresting Plaintiff in Violation the Fourteenth Amendment

As Plaintiff was previously advised in an order to amend (Doc. 15), Plaintiff's Fourteenth Amendment excessive force claim against Defendant Utsey is properly brought under the Fourth Amendment (as Plaintiff has alleged in her second claim); therefore, the Fourteenth Amendment excessive force claim should be dismissed. The Supreme Court has held that, where an enumerated constitutional right specifically applies to a claimed violation, the claim should be analyzed only as a possible violation of that enumerated right, not under the generalized notion of substantive due process. Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Because Plaintiff did not allege that any specific procedural due process rights were violated, Plaintiff's claims for excessive force are properly brought under the Fourth Amendment, not the Fourteenth Amendment. Therefore, Plaintiff's Fourteenth Amendment claims against Defendant Utsey should be dismissed.

C.    Seventh Claim: SRCSO, Sheriff Wendall Hall, and the Commission had in effect De Facto Policies, Practices and Customs in Place that were the Direct and Proximate Cause of Defendant Utsey's Conduct

Eighth Claim: SRCSO, Sheriff Wendall Hall, and the Commission are Liable under the Respondeat Superior Theory of Liability[2]

SRCSO, Sheriff Wendall Hall, and the Commission should be dismissed as Defendants in this action. Initially, as Plaintiff was advised in a previous order to amend (Doc. 15), SRCSO is not a suable entity. The capacity to be sued in federal court is governed by the law of the state in which the district court is located. Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing Fed. R. Civ. P. 17(b)). In Florida, there is no such legal entity as the "Santa Rosa County Sheriff's

---

[2]Claims Seven and Eight will be discussed together, as the claims are similar in nature and Plaintiff names the same Defendants in both claims.

Department."  Under Florida law, there are constitutionally created political subdivisions called counties and separately created constitutional officers, including a sheriff.  Fla. Const. art. VIII, §§ 1 (a) and (d).  However, no provision is made constitutionally or statutorily for a "Sheriff's Department" as a separate legal entity, as an agency of the county, or as a corporate entity, nor is a Sheriff's Department given authority to be sued in such a name.  *See* <u>Hobbs v. Holmes County Sheriff's Dep't</u>, Case No. 5:04cv82/RH, Doc. 10 at 3 (N.D. Fla. July 14, 2004) (concluding that the Holmes County Sheriff's Department is not a suable entity); <u>Turner v. Bieluch</u>, Case No. 9:03cv81059, Doc. 12 (S.D. Fla. 2004) (concluding that Palm Beach County Sheriff's Office lacks capacity to be sued); <u>Erickson v. Hunter</u>, 1996 WL 427769, at *1 (M.D. Fla. Apr. 10, 1996) (unpublished opinion) (dismissing claims against Collier County Sheriff's Office on grounds that it lacks the capacity to be sued); <u>Jones v. Collier County Sheriff's Dep't</u>, 1996 WL 172989 (M.D. Fla. Apr. 9, 1996) (concluding that Collier County Sheriff's Office is not a legal entity and therefore cannot be sued).  Therefore, SRCSO should be dismissed as a Defendant.

Next, Plaintiff has failed to state a basis for liability as to Defendant Wendall Hall; therefore, Defendant Wendall Hall should be dismissed as a Defendant.  Supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  *See* <u>Cottone v. Jenne</u>, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.* (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  *Id.* (internal quotation marks and citations omitted); <u>Wayne v. Jarvis</u>, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'"  <u>Gray ex rel.</u>

Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), aff'd, 915 F.2d 1574 (6th Cir. 1990); see also Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. See Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff generally alleges that Defendant Wendall Hall "had in effect de facto policies, practices, and customs exhibiting deliberate indifference to the constitutional rights of the citizens and residents of [] Santa Rosa County and were a direct and proximate cause of the unconstitutional conduct of Defendant Utsey, and of the resultant official cover-up of the unjust and unconstitutional conduct of this officer." (Doc. 16 at continuation pages 5–7). Further, Plaintiff generally alleges that Defendant Hall's customs and practices include: "(a) the failure to properly screen, supervise, discipline, transfer, counsel and/or otherwise control police officers engaged in the excessive and unjustified use of force, particularly those police officers who are repeatedly accused of such acts; and (b) the failure to properly train and supervise police officers in the use of excessive force" (id. at 5). Plaintiff's conclusory allegations, however, do not entitle her to relief. Plaintiff has failed to allege specific facts showing that Defendant Hall had a custom or policy in place that resulted in deliberate indifference to Plaintiff's constitutional rights. Plaintiff failed to identify, by anything other than generalized references to "customs and policies," the policies sanctioned or endorsed by Defendant Hall to which she refers in her complaint. Additionally,

Plaintiff failed to allege facts demonstrating that a history of widespread abuse existed that would have put Defendant Hall on notice of the need to take corrective action but he failed to do so. Although Plaintiff generally alleges that some "police officers" have been repeatedly accused of using excessive force, Plaintiff has offered no facts in support of this allegation, and in particular, Plaintiff has not alleged that Defendant Utsey has been repeatedly accused of excessive force, that Defendant Hall was aware of such allegations against Defendant Utsey, and that Defendant Hall failed to take any corrective action after being advised of Defendant Utsey's repeated misconduct. Moreover, Plaintiff failed to allege facts that would support an inference that Defendant Hall directed Defendant Utsey to act unlawfully or knew that he would act unlawfully and failed to stop him from doing so. Therefore, Sheriff Wendall Hall should be dismissed as a Defendant in this case.

Finally, Plaintiff's claims against the Commission should be dismissed. It is well established that a municipality cannot be held liable under § 1983 on a respondeat superior theory for the actions of municipal employees. *See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Municipal liability under § 1983 only exists when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers." *Id.*, 436 U.S. at 694; *see also* Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003) (stating that "municipalities may be held liable for the execution of a governmental policy or custom"); Davis v. DeKalb County School Dist., 233 F.3d 1367, 1375 (11th Cir. 2000) ("[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' that is, acts which the municipality has officially sanctioned or ordered.") (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986)). In the instant case, Plaintiff generally alleges that the SRCSO, acting through Wendall Hall and the Commission, failed to "effectively screen, hire, train, supervise and discipline their police officers, for their propensity for excessive and unjustified force and restraint, lack of truthfulness, and for their failure to protect citizens from unconstitutional conduct of other police officers, thereby permitting and allowing the defendant police officer herein to be in a position to violate the Plaintiff's federal and state constitutional rights, and/or to permit these actions to take place with their knowledge or consent" (Doc. 16 at continuation page 5). Again, Plaintiff has made only general, vague, and conclusory allegations. Plaintiff has alleged no

specific facts indicating that the Commission "officially sanctioned or ordered" the conduct of Defendant Hall, the SRCSO, or Defendant Utsey (Doc. 16 at continuation page 5). Similarly, Plaintiff has not alleged, nor do the facts suggest, that the Commission implemented, executed, or officially adopted a policy statement, ordinance, regulation, or decision related to the allegations in her complaint; nor has Plaintiff <u>identified</u> any such policy statement, ordinance, regulation, or decision. Thus, the Commission should be dismissed as a Defendant in this case.

> D.    Ninth Claim: SRCSO violated Federal and State Laws by Failing to Share Fingerprint Information between State and Federal Entities

Plaintiff claims that the "State of Florida participates in the National Fingerprint File Database program for sharing fingerprints" (*id.* at continuation page 7). Plaintiff alleges that federal and state law require that Florida share their fingerprint databases with the state and federal government (*id.*). Plaintiff states that on the day she was arrested, Defendant SRCSO took her fingerprints on the "Santa Rosa County computerized hand-scanning machine" (*id.* at continuation page 8). Plaintiff argues that Defendant SRCSO did not share her fingerprints with the Florida Department of Law Enforcement or the National Fingerprint File Database (*id.*). Plaintiff asserts that the SRCSO scanned her fingerprints for "unlawful purposes" (*id.*).

As this court is well aware, in order to prevail in a section 1983 action, a plaintiff must show that she was deprived of a federal right by a person acting under color of state law. <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1303 (11th Cir. 2001) (citation omitted). Plaintiff has not identified the federal right she was deprived of by SRCSO's taking of her fingerprints. To the extent Plaintiff claims that SRCSO violated her right to privacy by "unlawfully" taking her fingerprints, Plaintiff has failed to state a claim. Initially, as discussed *supra*, SRCSO is not a properly named Defendant in a § 1983 action. Moreover, a law enforcement agency may lawfully take an individual's fingerprints either with the consent of the party, with probable cause that a crime has been committed, or pursuant to a warrant for that individual's arrest. *See* <u>Hayes v. Florida</u>, 470 U.S. 811, 814, 105 S. Ct. 1643, 1646, 84 L. Ed. 2d 705 (1985). In the instant case, Defendant Utsey had a felony arrest warrant for Plaintiff, therefore the SRCSO had the authority to take her fingerprints. Alternatively, because Plaintiff was attempting to obtain a firearm permit, SRCSO could properly take Plaintiff's fingerprints to determine if she was a convicted felon or otherwise prohibited from

possession a firearm. Thus, Plaintiff's constitutional rights were not violated by the taking of her fingerprints, and Plaintiff's claim against the SRCSO for unlawfully taking her fingerprints and/or for failure to share her fingerprints with other law enforcement agencies should be dismissed.[3]

In conclusion, the only claims that appear to be facially sufficient are Plaintiff's claims against Defendant Utsey for using excessive force in violation of the Fourth Amendment and possibly Plaintiff's related state law claims against Defendant Utsey. Therefore, the undersigned recommends that all other claims and Defendants be dismissed, and that the case be referred back to the undersigned for service of Plaintiff's <u>Fourth Amendment excessive force</u> claim against Defendant Utsey (Plaintiff's second claim) and Plaintiff's state law claims against Defendant Utsey (Plaintiff's fourth, fifth, and sixth claims).

Accordingly, it is respectfully **RECOMMENDED**:

1.      That <u>claim one (1)</u> against Defendant Utsey, for <u>false arrest and illegal imprisonment in violation of the Fourth Amendment</u>, be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

2.      That <u>claim three (3)</u> against Defendant Utsey, for <u>excessive force in violation of the Fourteenth Amendment</u>, be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

3.      That <u>claim nine (9)</u> against SRCSO, for failure to share fingerprints and for unlawful scanning of Plaintiff's fingerprints, be **DISMISSED** with prejudice as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

4.      That the following Defendants be dismissed from this lawsuit: SRCSO, Wendell Hall and the Santa Rosa County Commission.

5.      That the matter be remanded to the undersigned for further proceedings on the following claims: (1) the use of excessive force by Defendant Utsey on July 10, 2003, in violation of Plaintiff's Fourth Amendment rights (claim 2); and (2) Plaintiff's state law claims for false arrest, false imprisonment, and excessive force against Defendant Utsey (claims four, five, and six).

---

[3]Although unclear, Plaintiff appears to also object to the SRCSO's failure to share her fingerprints with other law enforcement agencies. Plaintiff makes the illogical argument that her fingerprints were taken for an unlawful purpose, while also alleging a constitutional violation by the SRCSO's failure to share the unlawfully taken fingerprints.

At Pensacola, Florida, this <u>16</u><sup>th</sup> day of October 2008.


<u>/s/ Elizabeth M. Timothy                              </u>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CATHY WICKERS,
      Plaintiff,

vs.                                Case No.: 3:07cv290/WS/EMT

JERRY DALE UTSEY, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on Plaintiff's third amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 16). Leave to proceed in forma pauperis has been granted (Doc. 11).

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," id., 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed if the facts as plead do not state a claim to relief that is plausible on its

face.  *See* <u>Bell Atl. Corp. v. Twombly</u>, — U.S. —, 127 S. Ct. 1955, 1968–69, 1974, 167 L. Ed. 2d 929 (2007) (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).  Upon review of the third amended complaint, the court concludes that dismissal of several Defendants and several of Plaintiff's claims is warranted.

Plaintiff, a non-prisoner proceeding pro se, names four Defendants in this action:  (1) Jerry Dale Utsey, a "police officer" with the Santa Rosa County Sheriff's Office ("SRCSO"); (2) Wendall Hall, Sheriff of Santa Rosa County; (3) the Santa Rosa County Commission ("Commission"); and (4) the SRCSO (*see* Doc. 16 at 1–2).  Plaintiff alleges that she suffered "physical, emotional, and psychological injuries" as a result of her arrest by Defendant Utsey, and she seeks compensatory and punitive damages (*id.* at 4).

Plaintiff alleges the following facts in support of her claims.[1]  On July 10, 2003, Defendant Utsey arrested Plaintiff while she was at the SRCSO applying for a firearm permit, after advising her that he "had a felony arrest warrant for [her] being a habitual traffic offender"(*id.* at continuation page 1).  She alleges that Defendant Utsey handcuffed her "so tight that her wrists became bruised and the circulation to her hands [was] cut off" (*id.* at 3).  Plaintiff also alleges that during the arrest, "Defendant Utsey walked Plaintiff around the back of the police car [and] pushed Plaintiff into the trunk of the car, slamming Plaintiff's left knee into the rear bumper of the car, injuring Plaintiff's knee" (*id.* at continuation page 2).  Next, Plaintiff alleges Defendant Utsey placed her in the back of the police car and left her sitting "for about two hours in the hot weather" before transporting her to the Santa Rosa County Jail (*id.*).  Plaintiff alleges that the charges filed against her were dropped by the State Attorney's Office for the First Judicial Circuit of Florida because "there was insufficient evidence to prosecute" (*id.* at 3).  Moreover, Plaintiff alleges that an individual had stolen her driver's license and that the individual "had two misdemeanor cases brought against [her]" (*id.* at continuation page 1).  Thus, Plaintiff alleges, the information in the SRCSO's arrest report, as it

---

[1]All facts are derived from the Statement of Facts section of Plaintiff's complaint (Doc. 16 at 3 and continuation pages).

pertains to Plaintiff, "was all erroneous" (*id.*).

On the basis of these facts, Plaintiff makes nine separate claims (*see id.* at 4–continuation page 7). First, Plaintiff claims that she was falsely arrested and illegally imprisoned by Defendant Utsey in violation of the Fourth Amendment (*id.* at 4–continuation page 1). She alleges that Defendant Utsey acted intentionally, maliciously, and with reckless disregard for the natural and probable consequences of his actions (*id.* at continuation page 1). Additionally, Plaintiff alleges that Defendant SRCSO intentionally "passed false information to the Santa Rosa Clerk of the Court [] causing [] arrests [to be shown] that never occurred, which was done intentionally and did cause Plaintiff to lose employment opportunities and suffer mental, emotional, financial and physical duress" (*id.*). Second, Plaintiff claims Defendant Utsey intentionally, maliciously, and with deliberate indifference used excessive force in arresting her in violation of the Fourth Amendment (*id.* at continuation page 2). Third, Plaintiff claims that Defendant Utsey violated the Fourteenth Amendment by assaulting and detaining her (*id.* at continuation page 4). Plaintiff's fourth, fifth and sixth claims raise state law issues regarding the actions of Defendant Utsey. Seventh, Plaintiff alleges that the SRCSO, Wendall Hall, and the Commission had in effect "de facto policies, practices, and customs" in place that were the direct and proximate cause of the conduct of Defendant Utsey (*id.* at continuation page 5–7). Eighth, Plaintiff alleges that Defendants SRCSO, Wendell Hall, and the Commission are liable under the "Respondent Superior" [sic] theory of liability (*id.* at continuation page 7). Ninth, Plaintiff alleges that the SRCSO violated state and federal laws by failing to share fingerprint information between state and federal fingerprint databases (*id.* at continuation page 7–9).

A.    Claim One: Defendant Utsey Falsely Arrested and Illegally Imprisoned Plaintiff in Violation of the Fourth Amendment of the United States Constitution

Initially, as Plaintiff was previously advised in an order to amend (*see* Doc.15), Plaintiff has failed to state a Fourth Amendment claim based upon her allegedly false arrest (and resulting imprisonment) by Defendant Utsey (*id.* at 4, continuation pages 1–2). The elements of a claim for false arrest are a warrantless, malicious arrest or deprivation of liberty without probable cause. Baker v. McCollan, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979); Von Stein v. Brescher, 904 F.2d 572 (11th Cir. 1990). However, a claim of false arrest is barred by the existence of

probable cause or by the subsequent conviction of the accused.  *See* Marx v. Gumbinner, 905 F.2d 1503 (11th Cir. 1990); Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986).  A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.  The existence of probable cause to arrest is based on objective standards. Von Stein, 904 F.2d at 578 (citations omitted).  Thus, the level of proof needed to make a probable cause determination is conspicuously less than that which is needed to obtain a conviction, and the fact that a criminal defendant is later acquitted or released does not by itself mean that probable cause was initially lacking.  Marx, 905 F.2d at 1507; Von Stein, 904 F.2d at 578 n.9.  Further, when qualified immunity is asserted as an affirmative defense to a civil action, the standard becomes even more stringent.  To overcome qualified immunity, the plaintiff must additionally show that probable cause could not even have been arguably thought to exist in the eyes of a reasonable officer judging from the facts at hand and the clearly established law at the time.  *See* Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999) (citations omitted).  "Indeed, 'it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials . . . should not be held personally liable.'"  Von Stein, 904 F.2d at 579 (quoting Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040, 97 L. Ed. 2d 523 (1987)).

In the instant case, Plaintiff admits that Defendant Utsey explained to her that he had a felony arrest warrant for her for being a habitual traffic offender (Doc. 16 at continuation page 1).  Plaintiff also states that the traffic division of the Santa Rosa Clerk's Office "show[ed] two misdemeanor cases brought against the individual that apparently stole Plaintiff's drivers license []" (*id*.).  She further states that charges were actually filed against her, although they were later dismissed (*id.*). Thus, Plaintiff cannot establish that her arrest was unlawful or that probable cause to arrest her was lacking, as an arrest warrant is necessarily based on a finding that probable cause to arrest exists. Moreover, to the extent Plaintiff asserts that a warrant existed, but it was issued on the basis of erroneous information or resulted from someone else's improper use of Plaintiff's identification, Defendant Utsey nevertheless acted lawfully in arresting Plaintiff on the basis of the warrant.  *See,*

*e.g.*, Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998) ("a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant").  Plaintiff has not alleged, nor do the facts establish, that Defendant Utsey knew that the arrest warrant was issued in error.  Based on the foregoing reasons, Plaintiff's claims against Defendant Utsey for false arrest and illegal imprisonment are not a viable federal claims and should be dismissed.

      B.      Third Claim: Defendant Utsey Used Excessive Force in Arresting Plaintiff in Violation the Fourteenth Amendment

As Plaintiff was previously advised in an order to amend (Doc. 15), Plaintiff's Fourteenth Amendment excessive force claim against Defendant Utsey is properly brought under the Fourth Amendment (as Plaintiff has alleged in her second claim); therefore, the Fourteenth Amendment excessive force claim should be dismissed.  The Supreme Court has held that, where an enumerated constitutional right specifically applies to a claimed violation, the claim should be analyzed only as a possible violation of that enumerated right, not under the generalized notion of substantive due process.  Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).  Because Plaintiff did not allege that any specific procedural due process rights were violated, Plaintiff's claims for excessive force are properly brought under the Fourth Amendment, not the Fourteenth Amendment.  Therefore, Plaintiff's Fourteenth Amendment claims against Defendant Utsey should be dismissed.

      C.      Seventh Claim: SRCSO, Sheriff Wendall Hall, and the Commission had in effect De Facto Policies, Practices and Customs in Place that were the Direct and Proximate Cause of Defendant Utsey's Conduct

            Eighth Claim: SRCSO, Sheriff Wendall Hall, and the Commission are Liable under the Respondeat Superior Theory of Liability[2]

SRCSO, Sheriff Wendall Hall, and the Commission should be dismissed as Defendants in this action.  Initially, as Plaintiff was advised in a previous order to amend (Doc. 15), SRCSO is not a suable entity.  The capacity to be sued in federal court is governed by the law of the state in which the district court is located.  Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing Fed. R. Civ. P. 17(b)).  In Florida, there is no such legal entity as the "Santa Rosa County Sheriff's

---

[2]Claims Seven and Eight will be discussed together, as the claims are similar in nature and Plaintiff names the same Defendants in both claims.

Department."  Under Florida law, there are constitutionally created political subdivisions called counties and separately created constitutional officers, including a sheriff.  Fla. Const. art. VIII, §§ 1 (a) and (d).  However, no provision is made constitutionally or statutorily for a "Sheriff's Department" as a separate legal entity, as an agency of the county, or as a corporate entity, nor is a Sheriff's Department given authority to be sued in such a name.  *See* Hobbs v. Holmes County Sheriff's Dep't, Case No. 5:04cv82/RH, Doc. 10 at 3 (N.D. Fla. July 14, 2004) (concluding that the Holmes County Sheriff's Department is not a suable entity); Turner v. Bieluch, Case No. 9:03cv81059, Doc. 12 (S.D. Fla. 2004) (concluding that Palm Beach County Sheriff's Office lacks capacity to be sued); Erickson v. Hunter, 1996 WL 427769, at *1 (M.D. Fla. Apr. 10, 1996) (unpublished opinion) (dismissing claims against Collier County Sheriff's Office on grounds that it lacks the capacity to be sued); Jones v. Collier County Sheriff's Dep't, 1996 WL 172989 (M.D. Fla. Apr. 9, 1996) (concluding that Collier County Sheriff's Office is not a legal entity and therefore cannot be sued).  Therefore, SRCSO should be dismissed as a Defendant.

Next, Plaintiff has failed to state a basis for liability as to Defendant Wendall Hall; therefore, Defendant Wendall Hall should be dismissed as a Defendant.  Supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.* (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'"  Gray ex rel.

Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d
1263, 1269 (11th Cir. 1999)).  Furthermore, filing a grievance with a supervisory person does not
alone make the supervisor liable for the allegedly violative conduct brought to light by the
grievance, even if the grievance is denied.  Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F.
Supp. 335, 337 (W.D. Mich. 1989), aff'd, 915 F.2d 1574 (6th Cir. 1990); see also Bellamy v.
Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  Knowledge imputed to the supervisor "must be so
pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving
inmates of their constitutional rights."  Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th
Cir. 1994).  The failure to act or implement policy must be in the face of repeated violations or other
indicators signifying a strong likelihood that the situation will recur.  See Harris v. City of Marion,
79 F.3d 56, 58–59 (7th Cir. 1996).  Supervisors are generally entitled to rely on their subordinates
to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The
standard by which a supervisor is held liable in [his] individual capacity for the actions of a
subordinate is extremely rigorous."  Cottone, 362 F.3d at 1360 (internal quotation marks and citation
omitted).

In the instant case, Plaintiff generally alleges that Defendant Wendall Hall "had in effect de
facto policies, practices, and customs exhibiting deliberate indifference to the constitutional rights
of the citizens and residents of [] Santa Rosa County and were a direct and proximate cause of the
unconstitutional conduct of Defendant Utsey, and of the resultant official cover-up of the unjust and
unconstitutional conduct of this officer."  (Doc. 16 at continuation pages 5–7).  Further, Plaintiff
generally alleges that Defendant Hall's customs and practices include: "(a) the failure to properly
screen, supervise, discipline, transfer, counsel and/or otherwise control police officers engaged in
the excessive and unjustified use of force, particularly those police officers who are repeatedly
accused of such acts; and (b) the failure to properly train and supervise police officers in the use of
excessive force" (id. at 5).  Plaintiff's conclusory allegations, however, do not entitle her to relief.
Plaintiff has failed to allege specific facts showing that Defendant Hall had a custom or policy in
place that resulted in deliberate indifference to Plaintiff's constitutional rights.  Plaintiff failed to
identify, by anything other than generalized references to "customs and policies," the policies
sanctioned or endorsed by Defendant Hall to which she refers in her complaint.  Additionally,

Plaintiff failed to allege facts demonstrating that a history of widespread abuse existed that would have put Defendant Hall on notice of the need to take corrective action but he failed to do so. Although Plaintiff generally alleges that some "police officers" have been repeatedly accused of using excessive force, Plaintiff has offered no facts in support of this allegation, and in particular, Plaintiff has not alleged that Defendant Utsey has been repeatedly accused of excessive force, that Defendant Hall was aware of such allegations against Defendant Utsey, and that Defendant Hall failed to take any corrective action after being advised of Defendant Utsey's repeated misconduct. Moreover, Plaintiff failed to allege facts that would support an inference that Defendant Hall directed Defendant Utsey to act unlawfully or knew that he would act unlawfully and failed to stop him from doing so.  Therefore, Sheriff Wendall Hall should be dismissed as a Defendant in this case.

Finally, Plaintiff's claims against the Commission should be dismissed.  It is well established that a municipality cannot be held liable under § 1983 on a respondeat superior theory for the actions of municipal employees.  *See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Municipal liability under § 1983 only exists when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers."  *Id.*, 436 U.S. at 694; *see also* Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003) (stating that "municipalities may be held liable for the execution of a governmental policy or custom"); Davis v. DeKalb County School Dist., 233 F.3d 1367, 1375 (11th Cir. 2000) ("[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' that is, acts which the municipality has officially sanctioned or ordered.") (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986)).  In the instant case, Plaintiff generally alleges that the SRCSO, acting through Wendall Hall and the Commission, failed to "effectively screen, hire, train, supervise and discipline their police officers, for their propensity for excessive and unjustified force and restraint, lack of truthfulness, and for their failure to protect citizens from unconstitutional conduct of other police officers, thereby permitting and allowing the defendant police officer herein to be in a position to violate the Plaintiff's federal and state constitutional rights, and/or to permit these actions to take place with their knowledge or consent" (Doc. 16 at continuation page 5). Again, Plaintiff has made only general, vague, and conclusory allegations. Plaintiff has alleged no

specific facts indicating that the Commission "officially sanctioned or ordered" the conduct of Defendant Hall, the SRCSO, or Defendant Utsey (Doc. 16 at continuation page 5). Similarly, Plaintiff has not alleged, nor do the facts suggest, that the Commission implemented, executed, or officially adopted a policy statement, ordinance, regulation, or decision related to the allegations in her complaint; nor has Plaintiff <u>identified</u> any such policy statement, ordinance, regulation, or decision. Thus, the Commission should be dismissed as a Defendant in this case.

D.    Ninth Claim: SRCSO violated Federal and State Laws by Failing to Share Fingerprint Information between State and Federal Entities

Plaintiff claims that the "State of Florida participates in the National Fingerprint File Database program for sharing fingerprints" (*id.* at continuation page 7). Plaintiff alleges that federal and state law require that Florida share their fingerprint databases with the state and federal government (*id.*). Plaintiff states that on the day she was arrested, Defendant SRCSO took her fingerprints on the "Santa Rosa County computerized hand-scanning machine" (*id.* at continuation page 8). Plaintiff argues that Defendant SRCSO did not share her fingerprints with the Florida Department of Law Enforcement or the National Fingerprint File Database (*id.*). Plaintiff asserts that the SRCSO scanned her fingerprints for "unlawful purposes" (*id.*).

As this court is well aware, in order to prevail in a section 1983 action, a plaintiff must show that she was deprived of a federal right by a person acting under color of state law. <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1303 (11th Cir. 2001) (citation omitted). Plaintiff has not identified the federal right she was deprived of by SRCSO's taking of her fingerprints. To the extent Plaintiff claims that SRCSO violated her right to privacy by "unlawfully" taking her fingerprints, Plaintiff has failed to state a claim. Initially, as discussed *supra*, SRCSO is not a properly named Defendant in a § 1983 action. Moreover, a law enforcement agency may lawfully take an individual's fingerprints either with the consent of the party, with probable cause that a crime has been committed, or pursuant to a warrant for that individual's arrest. *See* <u>Hayes v. Florida</u>, 470 U.S. 811, 814, 105 S. Ct. 1643, 1646, 84 L. Ed. 2d 705 (1985). In the instant case, Defendant Utsey had a felony arrest warrant for Plaintiff, therefore the SRCSO had the authority to take her fingerprints. Alternatively, because Plaintiff was attempting to obtain a firearm permit, SRCSO could properly take Plaintiff's fingerprints to determine if she was a convicted felon or otherwise prohibited from

possession a firearm.  Thus, Plaintiff's constitutional rights were not violated by the taking of her fingerprints, and Plaintiff's claim against the SRCSO for unlawfully taking her fingerprints and/or for failure to share her fingerprints with other law enforcement agencies should be dismissed.[3]

In conclusion, the only claims that appear to be facially sufficient are Plaintiff's claims against Defendant Utsey for using excessive force in violation of the Fourth Amendment and possibly Plaintiff's related state law claims against Defendant Utsey.  Therefore, the undersigned recommends that all other claims and Defendants be dismissed, and that the case be referred back to the undersigned for service of Plaintiff's <u>Fourth Amendment excessive force</u> claim against Defendant Utsey (Plaintiff's second claim) and Plaintiff's state law claims against Defendant Utsey (Plaintiff's fourth, fifth, and sixth claims).

Accordingly, it is respectfully **RECOMMENDED**:

1.    That <u>claim one (1)</u> against Defendant Utsey, for <u>false arrest and illegal imprisonment in violation of the Fourth Amendment</u>, be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

2.    That <u>claim three (3)</u> against Defendant Utsey, for <u>excessive force in violation of the Fourteenth Amendment</u>, be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

3.    That <u>claim nine (9)</u> against SRCSO, for failure to share fingerprints and for unlawful scanning of Plaintiff's fingerprints, be **DISMISSED** with prejudice as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

4.    That the following Defendants be dismissed from this lawsuit:  SRCSO, Wendell Hall and the Santa Rosa County Commission.

5.    That the matter be remanded to the undersigned for further proceedings on the following claims: (1) the use of excessive force by Defendant Utsey on July 10, 2003, in violation of Plaintiff's Fourth Amendment rights (claim 2); and (2) Plaintiff's state law claims for false arrest, false imprisonment, and excessive force against Defendant Utsey (claims four, five, and six).

---

[3]Although unclear, Plaintiff appears to also object to the SRCSO's failure to share her fingerprints with other law enforcement agencies.  Plaintiff makes the illogical argument that her fingerprints were taken for an unlawful purpose, while also alleging a constitutional violation by the SRCSO's failure to share the unlawfully taken fingerprints.

At Pensacola, Florida, this <u>16</u><sup>th</sup> day of October 2008.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

      **Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**